## RENICK & FRAZIER v. BRIT DAWSON.

(Case No. 215—3561.)

1. DESCRIPTION — DEED — LAND CERTIFICATE.— A deed was made to unpatented land, describing it by metes and bounds, which contained a recitation that the commissioner of the general land office was authorized to issue patent to the purchaser "as assignee," and concludes as follows: "And I, the said W. M., also transfer the six hundred and forty acre certificate in the name of —— ——, issued to him on the —— day of ——, 18—, to said B. D., his heirs and assigns." At the time of the execution of the deed, a certificate for more than six hundred and forty acres had been located by the vendor on the land described in the deed, the field notes of the survey being identical with the description contained in the deed. In a suit by the vendee to recover the land, brought against a third party to whom patent had issued, *held,*

(1) The transfer of a certificate for six hundred and forty acres of land, upon which the commissioner might patent the land to the vendee, could mean no other certificate than that by virtue of which it was located and surveyed.

(2) The certificate, by its location, merged in the land.

(3) To describe the land was to identify the certificate by virtue of which it was located.

(4) A subsequent abandonment of the location would not divest the title of the vendee to an interest of six hundred and forty acres in the certificate.

2. NOTICE — PURCHASER. — A purchaser is charged with notice of all facts recited in the deed through which he claims title.

3. NOTICE — RECITATIONS IN DEED — PURCHASER. — When the recitations in a patent to land show that one of the mesne conveyances of the certificate on which the patent issued was made by a bankrupt to his assignee in bankruptcy, the patentee acquires by virtue of his patent only such estate as the bankrupt could convey. A purchaser of property at a bankrupt sale takes the property subject to all the equities with which it was chargeable in the hands of the bankrupt.

APPEAL from McLennan. Tried below before the Hon. X. B. Saunders.

This case was submitted on an agreed statement of facts and points of law involved, as follows:

This suit was brought by appellee, in the court below, to recover six hundred and forty acres of land, undivided, out of two tracts of land, one of six hundred and eighty-eight acres in Falls county, and the other of one hundred and seventy-five acres in McLennan county, both patented to S. H. Renick, assignee of Miguel Mata, by virtue of certificate No. 16–30, issued by the commissioner of the general land office, October 21, 1870, for eight hundred and seventy-seven acres, unlocated balance of certificate No. 12–214, and for partition.

The plaintiff introduced in evidence a deed from W. F. Mitchell to Brit Dawson, July 24, 1866, for six hundred and forty acres of land in Navarro county, describing it by metes and bounds, and concluding as follows: "And I, the said W. F. Mitchell, also transfer the six hundred and forty acre certificate in the name of —— ——, issued to him on the —— day of ——, 18—, to said Dawson, his heirs and assigns." It was proved that the Miguel Mata certificate was located by Mitchell at the time this deed was made on the land described in the deed; that the field

notes of the deed and the survey for Mitchell under the Mata certificate are identical; that the location by Mitchell and the return of field notes were duly entered in the books of the county surveyor of Navarro county.

The plaintiff also gave in evidence a transcript from the United States court, of proceedings in bankruptcy in the case of W. F. Mitchell, in which he reports among his assets ninety-four acres, unlocated balance of the Miguel Mata certificate, which was sold to Champ Carter for $4.70, at a public sale by his assignee, under an order of the court.

The deed from Mitchell to Dawson was recorded in Navarro county before the bankruptcy of Mitchell.

The defendants offered in evidence patents for the land in controversy to S. H. Renick, assignee, showing that the title was derived from Smith, assignee in bankruptcy of W. F. Mitchell.

Also the following agreement of counsel: "It is further agreed that the defendants purchased the certificate or the unlocated balance thereof issued to Champ Carter, assignee, from him and paid a valuable consideration therefor without actual notice of the plaintiffs' claim thereto or any part thereof."

It is further agreed that the two tracts of land, one in Falls county of six hundred and eighty-eight acres, and one in McLennan county for one hundred and seventy-five acres, are patented to S. H. Renick, assignee of Miguel Mata, and that the said lands are correctly described in the plaintiffs' petition.

Judgment for the plaintiffs.


*S. H. Renick*, for appellant.

I. The conveyance to Brit Dawson by Mitchell is void as to the certificate for uncertainty, and cannot be aided by proof; but if it could, the only description in it is a six hundred and forty acre certificate, and the M. Mata

was much larger. So, to connect the Mata with that conveyance, is to contradict the written transfer by parol evidence. It certainly could not constitute constructive notice of Dawson's claim, although it seems to have been recorded in Navarro county, but never filed in the land office.

II. Defendants were not chargeable with notice of the proceedings in Mitchell's bankruptcy, as they were not parties nor privies to the proceeding. But Mitchell's bankruptcy was closed and he discharged before defendants purchased, which was December 27, 1870. And a decree is not noticed after it is entered, but only whilst the matter is pending. Freeman on Judgments, sec. 206. There was no constructive notice of Dawson's claim, if the evidence shows he ever had any. There was no actual notice.

III. Even if the evidence shows any claim upon the certificate by Dawson, the defendants were innocent purchasers for value, and holding, as they do, the legal title to the land in controversy, they have equal equities, and their legal title must prevail. Story's Eq., 64, c and b; Sugden on Vend., ch. 16, p. 713, 7th ed.; Judson v. Corcoran, 17 How. (S. C.), 613; Lee v. Polk County Copper Mining Company, 21 How. (S. C.), 495; Walters v. Jewett, 28 Tex., 202; Johnson v. Newman, 43 Tex., 638.

IV. But it is contended that there is not sufficient evidence to show title to the certificate in Dawson. Every officer is presumed to act correctly until the contrary is made to appear. Titus v. Kimbro, 8 Tex., 210; Williams v. Talbot, 27 Tex., 166. The commissioner of the general land office is authorized to issue patents to the assignees of the original, and it will be presumed that he acted upon sufficient evidence until the contrary appears. Styles v. Gray, 10 Tex., 503; Johnson v. Smith, 21 Tex., 722; Bonner v. Hicks, 22 Tex., 155; Robertson v. Teal, 9 Tex., 344; Burleson v. McGehee, 15 Tex., 375. Much

may be said about certificates being personal property, but this suit is brought to recover land patented under the certificate, is a suit for real estate, and not for personal property, and the rights of the parties to it must be determined by the law governing real estate and no other. The same rules prevail for the protection of an innocent purchaser of real and personal estate. 2 Leading Cases in Equity, pp. 9, 43, 4th ed., 1877.

*Thos. Harrison,* for appellee.— There is no uncertainty in the conveyance. The land is described by metes and bounds, and the certificate passed with the land. The description in the deed and the field notes of the survey for Mitchell under the Mata certificate are identical. The certificate was personal property. "The good faith of the purchaser cannot invest him with title to the property if his vendor had no title." Dodd *v.* Arnold, 28 Tex., 101. The appellants were not entitled to notice of Dawson's rights. A purchaser at bankrupt sale cannot acquire more than the bankrupt had; *caveat emptor* applies. Bump on Law of Bankruptcy, 9th ed., 471, par. 6; id., 484, par. 3; id., 486 (bottom of page); id., 187; id., 494; id., 169 (bottom); McKiernon *v.* Fletcher, 2 La. Ann., 438; Baker *v.* Vining, 30 Me., 21; Anderson *v.* Miller, 15 Miss. (S. & M.), 586; Qurc O'Fallon, 2 Dillon, 548. But they had notice: The record of Dawson's deed in Navarro county. The records of the surveyor's office. The return of the certificate with the survey into the land office — all gave notice of his rights. The proceedings in bankruptcy gave notice to all the world that Carter had bought only ninety-four acres of the Mata certificate, and that he could only sell ninety-four acres. Bump on Bankruptcy, p. 482, par. 5, 9th ed.; p. 483, par. 3.

QUINAN, J. COM. APP.— This case is submitted upon an agreed statement of the facts and points of law involved, for adjudication thereon.

The facts are very meagerly stated, nor does a reference to the record afford much more information.

Upon the first point made, we are of opinion that the conveyance to Brit Dawson by Mitchell, of the land in Navarro county, taken in connection with the fact that the land described in it was located by Mitchell by virtue of the Miguel Mata certificate, that the field notes, as in the deed, were duly entered in the surveyor's books in Navarro county as a survey made under the Mata certificate, and that the deed also contains a transfer of the six hundred and forty acre certificate, is sufficient to establish the ownership of six hundred and forty acres in the Mata certificate in Brit Dawson. The deed, after a warranty of the certificate to Dawson, continues: "I do authorize the commissioner — the general land office to issue patent to said land to said Dawson, as assignee." It is very obvious from this that the certificate meant in the deed is the Mata certificate, which had been, to the extent of six hundred and forty acres, located upon the land described; that the transfer of it is made to perfect the title to the land, and that the patent might issue to Dawson for the same land. Mitchell had sold the land as unpatented; that sale carried with it the certificate by which it had been located. Simpson v. Chapman, 45 Tex., 566. What certificate it was, notwithstanding the imperfect description in the deed, is made absolutely certain by reference to the field notes of the land.

The transfer of a certificate for six hundred and forty acres upon which the commissioner of the general land office might patent the land to Dawson as assignee, could mean no other certificate than that by virtue of which it had been located and surveyed. The certificate, by its location, merged in the land. To describe the land was to identify the certificate by virtue of which it was located. Farris v. Gilbert, 50 Tex., 356.

The fact that the location was afterwards lost or aban-

doned could not have the effect to divest Dawson of his title to the certificate, or rather to his interest to the extent of six hundred and forty acres in it.

2. Dawson, then, was unquestionably the owner, and by a transfer in writing of an interest of six hundred and forty acres in this Mata certificate. It does not appear from the case stated in whose possession the certificate was; whether actually held by Mitchell, or remaining in the surveyor's office, or in the general land office, or in the hands of Mitchell's assignee, or Carter, or Renick. There is nothing to show whether any delivery was made of it by any vendor. The transfers from Mitchell down to Renick are all written transfers and are recited in Renick's patent. Whatever right the true owner of a land certificate may have as against one holding the actual possession of it in good faith, accompanied by a written transfer, need not be discussed. We should certainly hesitate to apply in such case the rule cited by appellee from Dodd *v.* Arnold, 28 Tex., 101, "that the good faith of the purchaser cannot invest him with title to the property if his vendor had none." It is very often said in our reports, that an unlocated land certificate is personalty, and may be assigned and transferred as such, by parol. Simpson *v.* Chapman, 45 Tex., 566. But it is not to be inferred from this that all the incidents attach to such transfer which belong to sales of personal property generally, and that the validity of the sale depends not on the good faith or innocence of the purchaser, but on the fact whether the vendor was the true owner of the property. On the contrary, we believe, as is said in Smith *v.* Sublett, 28 Tex., 170, "that a certificate to land unlocated is not an instrument the title to which passes by delivery; the presumption is that it belongs to the assignee, and not to the one in whose possession it may be found," and that a written transfer is necessary to pass the legal title to it.

3. But whether a written transfer is essential or not,

the fact being that all the transfers of the Mata certificate are in writing, the same rules will apply in considering the question whether Renick can be considered a purchaser in good faith, and how far he is chargeable with notice of the title of Dawson to six hundred and forty acres of the certificate, as if the title could only pass by written conveyances.   Wade on Notice, 133.

4. The general rule is, "if a fact is recited in a deed through which a party claims title to land, he is held to have notice of that fact."   Willis v. Gay, 48 Tex., 469.

Renick's patent recites the transfers from Mitchell to Smith, who was his assignee in bankruptcy.   He is chargeable, therefore, with knowledge that the title he acquired to the Mata certificate was derived through a sale of the bankrupt's effects by his assignee in bankruptcy.

It is well settled that a purchaser at a bankrupt's sale acquires no greater estate than the bankrupt had.   Bump on Bankruptcy, 471; Anderson v. Miller, 7 S. & M., 587. And one who derives his title under that sale can have no better claim.

Mitchell, the bankrupt, did not own the six hundred and forty acres which he had previously transferred to Dawson, of the Mata certificate, and did not claim to own it.   His sworn schedule sets out that he claimed but ninety-four acres of the certificate.

The purchaser at the sale, therefore, did not buy this Dawson six hundred and forty acres.   He received but a quit-claim deed.   He took the certificate subject to all the equities to which the thing purchased was subject in the hands of the bankrupt.   Mitchell could not dispute Dawson's title; and as against Renick and Frazier, claiming under Mitchell's assignee, Dawson's right must be held indisputable.   Dikes v. Miller, 24 Tex., 417; Rogers v. Burchard, 34 Tex., 441; Taylor v. Harrison, 47 Tex., 461; Harrison v. Boring, 44 Tex., 255; 3 Washburn R. P. 356.

It may be remarked that the agreement, as respects the purchase by the appellee of the certificate or unlocated balance thereof, does not negative the idea that Renick and Frazier had knowledge of the claim by Mitchell to own but ninety-four acres of it. It only asserts that they had no knowledge of Dawson's claim, but is perfectly consistent with the fact that they knew that Mitchell had no title to more than ninety-four acres of it, though they may not have known to whom the residue belonged.

Six hundred and forty acres, then, of the Mata certificate being the property of Dawson when located by the appellees, the land upon which it was located vested in Dawson, and, when patented to Renick, he holds the same and is chargeable as a trustee for Dawson to the extent of his interest. Simpson v. Chapman, 45 Tex., 566; Keyes v. H. G. & I. R. Co., 50 Tex., 171.

That the patent issued to Renick does not preclude Dawson from the assertion of his right to the land. Mitchell v. Bass, 26 Tex., 372; Wheat v. Owens, 15 Tex., 241.

We are of opinion, therefore, that the judgment ought to be affirmed.

AFFIRMED.

[Opinion delivered April 26, 1881.]