# NO. 12-07-00091-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *RAY C. HILL AND BOBBIE L. HILL,*<br>*APPELLANTS* | § | *APPEAL FROM THE 241ST* |
| *V.* | | |
| | § | *JUDICIAL DISTRICT COURT* |
| *JO ELLEN JARVIS, NEWELL S. JARVIS,*<br>*JOHN R. JARVIS AND*<br>*SARA ANN JARVIS THOMPSON,* | | |
| *APPELLEES* | § | *SMITH COUNTY, TEXAS* |

---

### *MEMORANDUM OPINION*

This is an action for conversion and unauthorized harvesting of standing timber. The jury found Appellants Ray C. Hill and Bobbie L. Hill had converted timber owned by Appellees Jo Ellen Jarvis, Newell S. Jarvis, John R. Jarvis, and Sara Ann Jarvis Thompson Jarvis and that Appellants had acted in bad faith or in reckless disregard of or with conscious indifference to the rights of the Jarvis family. The jury found damages in the amount of $14,175 for the market price of the timber taken, and $11,970 for the cost of replanting. Based on these findings, the trial judge rendered judgment for three times the market price pursuant to Texas Natural Resources Code section 151.051, the cost to replant, prejudgment interest, and court costs, less the stipulated credit for the Jarvis family's share of taxes paid by Hill. Appellants present four issues on appeal. We reverse and render in part, and affirm in part.

### BACKGROUND

The Jarvis family and the Hills owned undivided interests in a fifty acre wooded tract. In 2002, the Jarvis family filed suit to partition the tract. On July 22, 2002, the trial court conducted the trial of the partition action. The court found that all parties sought to have the property

partitioned in kind and that the Jarvis family owned a 63% interest in the property and the Hills a 37% interest. On April 11, 2003, the trial court signed the "Judgment Directing Partition" setting forth the exact interests of the parties, appointing commissioners to partition the property and a surveyor to assist them, finding the estimated fees and expenses of the commissioners and surveyor to be $5,800, and ordering the parties to deposit their pro rata share of that amount into the registry of the court.

The Jarvises deposited their share of the estimated partition costs in the registry of the court. The Hills, however, never deposited their share. As a result, the commissioners and the surveyor never completed the partition.

Ray Hill did not agree with the partition decree, but the Hills did not appeal the partition judgment. Without consulting the Jarvis family, Ray Hill sold all the merchantable timber on the property for $22,500. Ray Hill did not inform the Jarvis family or any of its members of the sale. John Jarvis learned from a third party that Ray Hill had sold the timber to a logging company that clear cut the timber.

In December 2003, the Jarvis family sued the Hills alleging the Hills had no right to sell and remove their 63% of the timber, because the trial court had ordered the tract partitioned in kind. The Jarvises sought damages for the conversion of their timber and treble damages under Texas Natural Resources Code section 151.051 for unauthorized harvesting of standing timber. At the close of the trial, the jury found, as follows:

    (1)      Ray Hill caused another person to harvest standing timber owned by the Jarvis family without their permission;

    (2)      Ray Hill converted timber owned by the Jarvis family;

    (3)      In converting such timber, Ray Hill acted in bad faith or in reckless disregard or with conscious indifference to the rights of the Jarvis family; and

    (4)      Damages of $14,175 for the market price of the Jarvis family's timber and $11,970 for the cost to replant their timber would reasonably compensate the Jarvis family.

Based on these findings, the trial court rendered judgment pursuant to Texas Natural Resources Code section 151.051 awarding the Jarvis family damages for three times the market price, the cost to replant, prejudgment interest, and court costs less the stipulated credit for the Jarvis family's share of taxes paid by the Hills after 2002.

In their first issue, the Hills contend the trial court erred by excluding evidence that the Jarvis family had failed and refused to pay real estate taxes in proportion to their ownership for seventeen years. In their second issue, the Hills argue that the trial court erred by ruling that the Jarvis family's failure to pay property taxes was res judicata based on the 2003 "Judgment Directing Partition."

**Applicable Law**

A cotenant who incurs expense necessary to protect the common property is entitled to be reimbursed by the other cotenants. *Wooley v. West*, 391 S.W.2d 157, 160 (Tex. Civ. App.–Tyler 1965, writ ref'd n.r.e.). On partition, a cotenant who expends funds necessary to protect or preserve the common property is entitled to have those expenditures charged to the tenants in common according to their pro rata ownership. *Gonzalez v. Gonzalez*, 552 S.W.2d 175, 181 (Tex. Civ. App.–Corpus Christi 1977, writ ref'd n.r.e.). Expenditures necessary to preserve the common property include those for taxes, insurance, and repairs. *See Duke v. Squibb*, 392 S.W.2d 885, 888 (Tex. Civ. App.–Texarkana 1965, no writ).

"A partition case, unlike other proceedings, has two final judgments, and the first one is appealable as a final judgment." *Griffin v. Wolfe*, 610 S.W.2d 466, 466-67 (Tex. 1980). In the first trial, "the court shall determine the share or interest of each of the joint owners or claimants in the real estate sought to be divided, and all questions of law or equity affecting title to such land which may arise." *See* TEX. R. CIV. P. 760. At the first trial, a cotenant "may have an account from another for rents and profits received, waste committed, moneys fraudulently obtained, betterments made, and taxes, etc., paid . . . ," and "the court has a right to adjust all such equities. . . ." *Sayers v. Pylan*, 139 Tex. 57, 61, 161 S.W.2d 769, 771-72 (1942). The first judgment or preliminary decree determines "the merits of the case," concludes "the rights of the parties," and must be challenged by a direct appeal. *Burkitt v. Broyles*, 340 S.W.2d 822, 823 (Tex. Civ. App.–Waco 1960, writ ref'd n.r.e.) (quoting *Cannon v. Hemphill*, 7 Tex. 184, 1[96-]97 (1851)). The second decree adopts the report of the commissioners. *See* TEX. R. CIV. P. 769, 771. Matters decided in the preliminary or first decree cannot be challenged in an appeal from the trial court's order adopting the commissioners' report. *White v. Mitchell*, 60 Tex. 164, 165 (1883); *Burkitt*, 340 S.W.2d at 823-24.

Res judicata, or claim preclusion, prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit. *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex.

1984).

**Discussion**

The Hills contend the trial court erred in excluding evidence that they paid taxes on the property and that the Jarvis family refused to pay their proportionate share of the taxes "for seventeen plus years or at least three of the last five years."

The trial court ruled that Ray Hill could explain that he cut the timber to pay the taxes, but that if he testified to taxes paid before July 22, 2002, the date of the first decree in the partition suit, the trial court would instruct the jury "that Ray Hill did not have the legal right to sell any timber from the jointly owned land in order to recover his claim for any taxes paid before July 2002." Without mentioning dates or amounts, Ray Hill asserted several times during his testimony that he sold the timber to pay the taxes. At the close of evidence, the parties stipulated the amount of taxes paid by the Hills since 2002 was $1,758.61 and that the Jarvises were responsible for 63% of those taxes.

The partition judgment determined the rights of the parties with respect to any adjustment of equities, including any claim for reimbursement the Hills might have had for the taxes they paid before the 2002 judgment. The Hills did not appeal the partition judgment. The trial court correctly concluded that, under the doctrine of res judicata, the 2002 partition judgment barred the Hills' claim for reimbursement for taxes paid before the judgment. Therefore, the trial court did not err in ruling that if the Hills offered evidence of their payment of taxes before 2002, it would instruct the jury that the partition judgment barred the Hills' recovery for taxes they paid before 2002. The Hills' first and second issues are overruled.

### DAMAGES FOR THE UNAUTHORIZED HARVESTING OF TIMBER

In their third issue, the Hills contend the trial court erred in awarding the Jarvis family damages for the unauthorized harvesting of timber without allowing the Hills reimbursement for the Jarvis family's proportionate share of the taxes.

**Applicable Law**

Although "any co-tenant may sell and convey timber standing and growing on commonly held properties and pass good title thereto," "such rule is not without limitation. . . . [B]oth the selling co-tenant and his vendee [are] liable to the non-selling co-tenants for their proportionate part of the timber cut and removed where the timber cut was more than the selling co-tenant's proportionate part." *Green v. Crawford*, 662 S.W.2d 123, 127 (Tex. App.–Tyler 1983, writ ref'd

4

n.r.e.). A cotenant may maintain a conversion suit against another cotenant who has appropriated the entire commonly owned property for his own use and benefit. ***Cass v. Stephens***, 156 S.W.3d 38, 61 (Tex. App.–El Paso 2004, pet. denied). If possession is initially lawful, demand and refusal to return the property may be required for the cause of action to accrue. ***Id.*** Demand and refusal are not necessary, however, when the possessor's acts manifest a clear repudiation of the plaintiff's rights. ***Id.***

Texas Natural Resources Code section 151.051, entitled "Damages for Unauthorized Harvesting" provides, in pertinent part, as follows:

> (a) A person who harvests standing timber with knowledge that the harvesting is without the permission of the owner of the standing timber and a person who causes another person to harvest standing timber without the permission of the owner of the standing timber are jointly and severally liable to the owner for damages in an amount equal to three times the market price of the timber harvested without permission.

TEX. NAT'L RES. CODE ANN. § 151.051(a) (Vernon Supp. 2007).

Although the term "waste" does not include ordinary depreciation due to age or use, the failure of a cotenant in possession to properly protect the common property amounts to an act of waste. ***Sadler v. Duvall***, 815 S.W.2d 285, 292-93 (Tex. App.–Texarkana 1991, writ denied); *see also **Guffey v. Stroud***, 16 S.W.2d 527, 529 (Tex. Comm'n App. 1929, opinion adopted). The cutting of timber resulting in permanent injury is waste unless there is specific permission to cut the trees. ***Anderson v. Anderson***, 97 S.W.2d 513, 515 (Tex. Civ. App.–Fort Worth 1936, no writ).

**Discussion**

The Hills first complain that the issue inquiring "Did Ray Hill cause another person to harvest standing timber owned by the Jarvis family, without the permission of the Jarvis family?" was improper, because the question "presumes separate ownership contrary to Texas law on cotenancy." The Hills did not object to the questions at trial; therefore, their complaint is waived. *See* TEX. R. CIV. P. 272.

Secondly, the Hills contend that "there was no theft and treble damages are unauthorized by case law or [Texas Natural Resources Code] Section 151.051." Even assuming that when Ray Hill sold the timber, a cotenancy still existed despite the prior entry of the first decree in the partition suit, nothing in the statute excuses Ray Hill's unauthorized sale. The statute does not exclude cotenants from its imposition of treble damages.

5

The Hills next contend that a cotenant has no duty to restore common property to its original condition. Although they were not liable for depreciation to the property because of age or use, the Hills had a duty not to commit waste and were liable to the cotenants for breach of that duty.

Finally, the Hills reiterate their complaint that they were not allowed reimbursement for their payment of the Jarvis family's proportionate share of the taxes. The court allowed reimbursement for those taxes paid since the first partition judgment in the amount stipulated by the parties. As we have previously explained, the decree partitioning the property is conclusively presumed to have adjusted the equities among the joint owners as they existed when the decree was entered. *See Reed v. Robertson*, 106 Tex. 56, 59, 156 S.W. 196, 197 (1913). The Hill's third issue is overruled.

## DAMAGES AGAINST BOBBIE L. HILL

In their fourth issue, the Hills contend the trial court erred in awarding damages against Ray Hill's spouse, "Bobby L. Hill," absent proof of acts committed by her. They argue there was no evidence presented of her participation in the sale or removal of the timber and the court submitted no issues regarding her involvement.

**Applicable Law**

A person is liable for the acts of her spouse only if the spouse acts as her agent, or the spouse incurs a debt for necessaries. TEX. FAM. CODE ANN. § 3.201(c) (Vernon 2006). A spouse does not act as an agent of the other solely because of the marriage relationship. TEX. FAM. CODE ANN. § 3.201(c) (Vernon 2006). Nor is the fact of their marriage evidence of the apparent authority of one spouse to act as agent for the other. *Patel v. Kuciemba*, 82 S.W.3d 589, 595 (Tex. App.–Corpus Christi 2002, pet. denied). Neither spouse is individually liable for the torts of the other spouse, unless liability is imposed under a doctrine such as agency, respondeat superior, or joint enterprise. *Lawrence v. Hardy*, 583 S.W.2d 795, 799 (Tex. Civ. App.–San Antonio 1978, writ ref'd n.r.e.). All community property is subject to the tortious liability of either spouse incurred during marriage. TEX. FAM. CODE ANN. § 3.202(d) (Vernon 2006).

The Jarvis family points to Ray Hill's deposit of the $22,500 in the Hills' joint bank account as evidence of Bobbie Hill's participation in the conversion of the Jarvis family's share of the timber. They argue that by her acceptance of the benefits of Ray Hill's unauthorized sale of the timber, she ratified and became responsible for his actions. "Ratification may occur when a principal, though [s]he had no knowledge originally of the unauthorized act of [her] agent, retains the benefits of the transaction after acquiring full knowledge." *Land Title of Dallas v. F.M. Stigler, Inc.*, 609 S.W.2d

6

754, 756 (Tex. 1980).  The knowledge to support ratification may be shown by evidence either of knowledge or of facts from which such knowledge may reasonably be imputed to the principal. *Wyatt v. McGregor*, 855 S.W.3d 5, 13 (Tex. App.–Corpus Christi 1993, writ denied).

There is, however, no evidence in this record sufficient to show that Bobbie Hill was aware of her husband's actions or of his deposit of money in their joint checking account.  The evidence clearly falls short of demonstrating the "full awareness" that is predicate to ratification.  The Hills' fourth issue is sustained.

<u>DISPOSITION</u>

The trial court's judgment against Bobbie L. Hill, individually, is ***reversed and*** judgment ***rendered*** that the Jarvis family take nothing against Bobbie L. Hill, individually.  In all other respects, the judgment is ***affirmed***.

<u>BILL BASS</u><br>Justice

Opinion delivered June 30, 2008.
*Panel consisted of Worthen, C.J., Griffith, J., and Bass, Retired Justice, Twelfth Court of Appeals, Tyler, sitting by assignment.*

(PUBLISH)